Filed 8/29/25  P. v. Hall CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER CONTEE HALL,<br><br>    Defendant and Appellant. | B336717<br><br>(Los Angeles County<br> Super. Ct. No. LA026396) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Jesic, Judge.  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer, Deputy Attorney General, and Noah P. Hill, Supervising Deputy Attorney General, for Plaintiff and Respondent.

Following his resentencing under Penal Code section 1172.75,[1] Alexander Contee Hall appeals the trial court's denial of his request to dismiss one of his prior strike convictions.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

I.    *Factual Background*

The following facts were taken from the opinion in Hall's direct appeal. (*People v. Hall* (1998) 67 Cal.App.4th 128 (*Hall I*).)

On January 28, 1997, at about 11:00 p.m., Arturo Salazar parked his 1987 black Plymouth Voyager van at his residence.  During the early morning hours of January 29, the manger of his apartment building told him the van had been stolen.  Between 10:00 and 11:00 a.m. on January 29, Jay Torres saw the stolen van exit a back alley.  The vehicle did not have a license plate.  Torres called the police and reported that the van, which contained five people, had circled the area around the alley at least twice during a half hour period.

In response to the call, Los Angeles Police Officer Mario Rivas drove his car into the alley.  It was about 11:30 a.m.  Upon sighting the stolen van, Rivas identified himself as a police officer.  He was about to initiate a stop when all five occupants jumped out of the van.  The van continued moving until it collided with the police car.  One of the passengers exited out of the driver's door, a second from the front passenger door, and the rest through the sliding passenger door.  There was no one in the alley other than these five individuals and the police. The driver ran off in one direction and the four passengers in another.  Officer Rivas, who was about 10 to 15 feet away,

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

2

pursued the four passengers.  He "got three good looks" at one of them, Hall, before he climbed over a fence and got away.

Officer Rivas set up a perimeter by calling for back-up units to take posts at certain corners so that no one could enter or leave the secured location.  At about 2:00 p.m., during a search of the area, Officer Joe Flores saw Hall existing from the area of some apartments.  When Hall spotted Officer Flores, he immediately ran across the street, then jumped over a parked car in an alley and over several fences before attempting to enter a house by making "jerking motions to the door handle" of the house.  Hall was arrested.  Officer Rivas positively identified him as one of the individuals who had exited the van.  Officer Rivas recovered a Fila shoe in the pathway that the four suspects had run through.  The shoe matched the shoe Hall was wearing when he was arrested.

The plastic behind the steering wheel of the van had been ripped open, enabling someone to "hot wire" the van, thereby activating the ignition without a key.  The front window and passenger window had been broken. During the search of the van, Officer Rivas found a loaded sawed-off shotgun with a pistol grip.  The shotgun was on the floorboard, between the driver and the passenger seating area.  In the center of the van, Officer Rivas found a simulated handgun with a bandanna wrapped around its muzzle.  He also found five colored nylon stockings, tied off at the top and with eye and nose holes.  These items were on the van floor, alongside the firearms.  He further found a brown glove and a sling for carrying a shotgun.  None of these items were in the van when it was stolen.

Officer Rivas testified that robbers typically use stolen guns and stolen cars.  He further opined that empty pillowcases, shotguns, "fabricated" firearms, and masks, such as those he found, are commonly used in robberies.

Officer Chris McKinney, a gang expert, testified that Brian Harrold, one of the van occupants chased by Officer Rivas and later arrested, admitted he was a gang member. Hall was an "associate" of that gang, which meant that he participated and assisted the gang in its criminal activities, although he was not a member of the gang. Officer Kevin Scroggins testified that when he contacted Hall in July 1991, Hall was with Harrold. Officer McKinney stated that the gang was formed for the purpose of starting up "an enterprise of money making by illegal means or illicit means."

Officer Tim Shaw testified that he personally had investigated takeover robberies involving this gang. They generally used three to six people, one of whom might remain in a stolen vehicle to act as the getaway driver. The gang members wore gloves and disguises, such as ski masks, and used shotguns, handguns and rifles to take over complete control of a business before robbing the business and its customers. Prior to the present incident, Harrold and Joseph Corson, other occupants of the van, were chased by Officer Rivas and later apprehended. They admitted to Officer Shaw that they were gang members.

II.    *Conviction, Sentence, and Appeal*

In 1997, a jury found Hall guilty of receiving stolen property (§ 496, subd. (a), count 1), carrying a concealed firearm in a vehicle (§ 12025, subd. (a)(1), count 2) and conspiracy to commit robbery (§§ 182, subd. (a)(1), 211, count 3). The trial court found true allegations that Hall had sustained two prior convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and that he had served one prior prison term (§ 667.5, subd. (b)). The court sentenced Hall, pursuant to the Three Strikes law, to a total of 50 years to life in state prison, which consisted of: imposing

4

consecutive terms of 25 years to life on counts 1 and 3; imposing and staying a term of 25 years to life on count 2; and staying the one-year prior prison term enhancement.

On appeal, this court held that the trial court erred in imposing mandatory consecutive sentences on counts 1 and 3, and the matter was remanded for resentencing. (*Hall I, supra,* 67 Cal.App.4th 128.) Following remand, the trial court resentenced Hall to concurrent terms of 25 years to life on counts 1 and 3, and it imposed the one-year prior prison term enhancement, for a total of 26 years to life in prison. The court imposed and stayed 25 years to life on count 2.

III.   *Resentencing Motion*

In 2022, Hall filed a motion for recall of his current sentence under section 1172.75. In 2023, he filed a resentencing memorandum. In this memorandum, Hall requested the trial court dismiss his prior prison term enhancement and further reduce his sentence "after consideration of his post-conviction conduct, and application of current sentencing law and presumptions." Hall argued that the court should "dismiss his strike priors" based on the following mitigating circumstances: multiple enhancements were alleged in his case; his undiagnosed mental illness leading to his unlawful conduct; his childhood trauma of physical and sexual abuse; and his rehabilitation efforts.

In 2024, the trial court dismissed the prior prison term enhancement and held a full resentencing hearing. Defense counsel requested that the court dismiss one of his prior strikes. He argued that Hall was 21 years old at the time he committed the robbery offenses, which resulted in the prior strikes. Hall had taken a plea deal for the robberies in exchange for a five-

year sentence in state prison. Defense counsel asked the court to "take into consideration youthful factors, [his] brain development, and . . . his childhood trauma." Defense counsel noted that "no one was hurt" during the current offenses and argued that given Hall was now 53 years old, he had a lower risk of reoffending.

In opposing Hall's request, the People noted that one of Hall's prior strikes involved Hall using the vehicle he was driving to intentionally run down a motorcyclist, who suffered broken ribs as a result of the collision. When Hall had knocked the victim off the motorcycle, his accomplice got out of the vehicle and stole the victim's wallet. Hall's other prior strike involved a different victim. The People informed the court that Hall had been convicted of possession of marijuana in a custodial facility in 2018, and that he had incurred numerous rule violations while in custody, including possession of drugs and alcohol, possession of cell phones, participating in a prison riot, fighting with inmates, and delaying a correctional officer in performance of their duties. Most recently, in April 2021, Hall engaged in a fight with multiple inmates.[2]

The trial court indicated it had "a tough decision to make." The court stated Hall had a current strike (conspiracy to commit robbery) and two prior strikes, one of which was "really serious." The court further noted that "if I was [presiding over] this trial [at the time] and I had to do the sentence and [defense counsel] asked me to strike a strike . . . I'm not sure I would have." The court also noted Hall's poor behavior while incarcerated. Therefore, the court declined "to use [its] discretion to strike the strikes." The court then

---

[2]     Despite the resentencing hearing taking place in January 2024, the trial court and the parties only had Hall's prison records through 2022.

6

stated that it had a feeling Hall was going to be paroled "in about a month." The court explained that "the parole board is in a great position to decide whether or not [Hall was] ready to be released." The court clarified it was "not bas[ing] [its] decision on [parole]." The court further cautioned, "I don't want you to take this for a second that this is the basis for why I'm making the decision. I'm making it for legal grounds." Ultimately, the court resentenced Hall to the same concurrent terms of 25 years to life on counts 1 and 3, for a total of 25 years to life in prison. The court also imposed and stayed 25 years to life on count 2.

Defendant timely appealed.[3]

## DISCUSSION

I.   *Legal Principles and Standard of Review*

When a trial court conducts a resentencing pursuant to section 1172.75 (*People v. Rogers* (2025) 108 Cal.App.5th 340, 361), the court has discretion to dismiss a "strike" allegation under our Three Strikes law if doing so is in "furtherance of justice." (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504; *People v. Williams* (1998) 17 Cal.4th 148, 161.)[4]

---

[3]   After reviewing the record and briefing, this court requested and received supplemental briefing addressing whether the trial court had jurisdiction to hold a resentencing hearing under section 1172.75. We are satisfied that the trial court had jurisdiction to resentence Hall. (See *People v. Cota* (2025) 112 Cal.App.5th 1118, __ , [334 Cal.Rptr.3d 901, 908].) We deny Hall's request for judicial notice, as the documents were not germane to our determination.

[4]   This is not a case where Hall's request to dismiss the prior strikes would potentially overturn an earlier decision denying him relief under section 1170.126, which is the statutory provision affording relief to defendants whose offense of conviction is a nonviolent or nonserious felony. Here, Hall's current conviction is conspiracy to commit robbery, which

The Three Strikes law was formulated to impose long sentences on "revolving-door career criminal[s]." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320, disapproved on another ground by *People v. Dain* (2025) ___Cal.5th ___, 2025 WL 2205590.) In deciding whether to exercise this discretion, the court is directed to "'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) We review a trial court's decision not to dismiss a prior strike for an abuse of discretion. (*Id.* at pp. 374, 378.)

The trial court did not abuse its discretion in denying Hall's request to dismiss his strike priors. The court had sufficient evidence that he was precisely the type of revolving-door career criminal for whom the Three Strikes law was enacted. Hall committed his prior strike convictions at age 21 (first and second) and 26 (third). He committed the third shortly after his release from state prison, while he was on parole. During his current incarceration, Hall was also convicted of possession of marijuana in a

---

constitutes a serious felony (§ 1192.7, subd. (c)(19), (43)). Therefore, this case does not raise any questions about the interplay between sections 1172.75 and 1170.126. (Cf., e.g., *People v. Superior Court (Guevara)* (2023) 97 Cal.App.5th 978, 981, 984, review granted Mar. 12, 2024, S283305; *People v. Santos* (2024) 100 Cal.App.5th 666, 673–674, review granted May 29, 2024, S284341; *People v. Kimble* (2024) 99 Cal.App.5th 746, 754, review granted Apr. 24, 2024, S284259; *People v. Superior Court* (*Williams*) (2024) 102 Cal.App.5th 1242, 1261, review granted Aug. 28, 2024, S286128.)

correctional facility. Moreover, Hall had a litany of rule violations in prison, the most recent violation being a fight with multiple inmates.

Hall resists this conclusion by contending that the trial court was unaware that "it could strike one of [his] prior 'strike' convictions, rather than both, and resentence him to a second 'strike' sentence." "'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625.) However, "we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)

Here, Hall asserts that the trial court's reference to Hall's act of violence in committing one of his prior strikes suggests that "it is plausible that the court might have stricken the other prior 'strike' conviction if it considered that possibility of striking just [that] one." We find Hall's assertion is mere speculation and does not affirmatively demonstrate the court was unaware of its discretion to dismiss only a single prior strike. Rather, the record supports a contrary conclusion. As one example, the trial

9

court stated that if it had presided over the original trial and defense counsel asked the court to "strike a strike," it was not sure it would have granted the request. Thus, the court implicitly acknowledged its ability to dismiss simply one strike at the resentencing hearing.

Hall also contends the trial court "saw [Hall] as not a danger if released, given that the court thought that the [Parole] Board would release [him]." However, the court explicitly stated several times that its comments concerning a "feeling" about Hall's upcoming parole hearing did not factor into its ruling. Moreover, the court did not weigh in on Hall's suitability for parole or assess his potential dangerousness if released. Rather, the court noted the parole board was "in a great position to decide whether or not [he was] ready to be released." In sum, we cannot conclude that the trial court's decision to decline to strike one of Hall's strike priors exceeded the bounds of reason or was otherwise an abuse of discretion. (See *People v. Carmony, supra*, 33 Cal.4th at p. 378.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

WE CONCUR:

COLLINS, J.

TAMZARIAN, J.

10